UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES P. LOFTON | No. 22 CR 581<br><br>Judge Manish S. Shah |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, requests that the Court sentence defendant James P. Lofton to a term of imprisonment of 22 months with credit for time served. In October 2022, defendant went to the FBI Chicago headquarters and threatened to burn and kill a guard working in the visitor entrance guard station. Approximately a month later, Lofton returned to the FBI and set the guard station on fire while the same guard was inside. In this instance, given the time that defendant has spent in pretrial detention and the significant mitigating factors in his background, a sentence of time served is warranted but not greater than necessary to hold defendant accountable for the serious nature of this offense, afford deterrence, and provide just punishment for the offense conduct. The Court should further order defendant to serve a three-year term of supervised release and pay restitution in the amount of $3,900.

I.     **FACTUAL BACKGROUND**

On October 7, 2022, Lofton approached the FBI Chicago Field Office located at 2111 W. Roosevelt Road and walked up to the guard station at the public entrance.

Victim A, a Federal Protective Service ("FPS") contract employee, was working as the guard on duty screening public visitors to the FBI property. Presentence Investigation Report ("PSR") at ¶ 8. Lofton approached Victim A and spoke to her through the glass. GVO Ex. A-1, A-2. After talking to Victim A briefly, Lofton said, "Bitch, I'm going to burn you, and everyone is going to die. You fucking Mexicans are going to burn and die." *Id.* Several FBI agents and FPS officers engaged Lofton in conversation to deescalate the situation. Lofton ultimately asked to be taken to a hospital, and he was transported to one by the Chicago Fire Department. *Id.*

On November 4, 2022, Lofton went to a Mobil Gas station a short distance from the FBI Chicago Field Office, filled a gallon jug with gasoline, and paid for it in cash. *Id.* at ¶ 9. Lofton carried the jug of gasoline to the FBI Chicago Field Office and approached the guard station. Victim A was on duty again that day. Surveillance video shows that, after exchanging a few words with Victim A, Lofton removed a jacket that he was wearing and secured the jacket to a call box affixed to the guard station. *See* Government's Version of the Offense ("GVO") at Exhibit B. Lofton poured gasoline onto the jacket and lit it on fire. The guard station immediately caught fire, and the blaze grew to several feet in size. Victim A escaped the guard station through another door away from the fire. Repairs to the guard station cost $3,900.

2

Supplemental Government's Version of the Offense Conduct ("Supp. GVO") at Exhibit C.

## II. GUIDELINES CALCULATION AND OBJECTIONS TO THE PSR

The government concurs with the Guidelines calculation set forth in the PSR. The offense level is 21. PSR at ¶ 25. Defendant earns six criminal history points, placing him in Criminal History Category III. *Id.* at ¶ 44. The resulting Guidelines range as to Count One is 46 to 57 months' imprisonment. *Id.* at ¶ 121.

## III. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the sentence to impose, after calculating the Sentencing Guidelines, the court must consider the statutory factors listed in § 3553(a)(1)-(7). *Gall v. United States*, 552 U.S. 38, 49 (2007).

For the reasons set forth below, a below-Guidelines sentence of time served is sufficient but not greater than necessary to reflect the serious nature of the offense, give the appropriate consideration to defendant's history and characteristics, address the need to afford adequate deterrence, and impose just punishment.

### A. The Nature and Circumstances of the Offense

Defendant's crime put the lives of federal employees at risk and caused significant damage to federal property. Defendant's first visit to the FBI in October 2022 was troubling in itself because he went to a federal facility and made a racially

3

directed threat to kill a federal employee engaged in her job. Despite that, rather meeting defendant with force, FBI and Federal Protective Service employees took the appropriate and laudable steps to speak with defendant, assess the situation, and arrange for him to be taken to the hospital. Although defendant received assistance at FBI, he did not return in November 2022 to seek help again. Instead, he arrived carrying a jug of gasoline and intending to commit arson. He set the fire knowing that the guard (with whom he had just spoken) was inside the building, and he left the scene immediately. Notably, the FPS guard was the only person inside the station at the time defendant set the fire, but members of the public frequently wait in and pass through the building daily. Although defendant's dangerous conduct only caused property damage, it posed a significant risk to the safety of people in and around the FBI guard station.

### B. Defendant's History and Characteristics

The government recognizes the presence of significant mitigating factors in defendant's history and characteristics. Chief among these factors is his lifelong struggle with schizophrenia and other diagnoses, and the accompanying symptoms of self-harm and suicidal ideations. PSR ¶¶ 95-97. Notably, defendant has also at times reported having homicidal ideations, which raises concerns about his release into the community if he becomes non-compliant with his medication, particularly in light of the instant offense. *Id*. at ¶ 95.

The government acknowledges the defendant's progress since his release into inpatient care at Bryn Mawr Care treatment facility. According to the PSR, defendant has reconnected with family members, has been attending mental health treatment group sessions, has been compliant with medications, and is undergoing assessment to determine his ability for independent living. *Id*. at ¶¶ 101-103.

A sentence of time served is appropriate here given defendant's mental health diagnoses and the stability and progress that defendant has achieved while on pretrial release in the last 10 months. The ongoing risk of defendant becoming non-compliant with medication also warrants the Court imposing the maximum term of supervised release permitted by the statute to ensure that defendant continues this progress.

    **C.**    **The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Provide Just Punishment**

The sentence imposed should afford adequate specific and general deterrence and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider). The need for general deterrence is significant in light of the increased incidence in recent years of threats and violence against government employees, property, and institutions.[1] Here, given the circumstances described above, the goal

---

[1] Merrick B. Garland, Attorney General, Opening Statement Before the House Judiciary Committee (June 4, 2024), available at https://www.justice.gov/archives/opa/speech/attorney-general-merrick-b-garland-delivers-opening-statement-house-judiciary-0.

of deterrence is achieved by a sentence of time served and the imposition of the maximum term of supervised release.

## IV. SUPERVISED RELEASE

A three-year term of supervised release, the maximum term permitted by the statute, is necessary and appropriate to protect the community, ensure that defendant continues to receive the necessary medical care and does not engage in future criminal activity, and to promote respect for the law. The government agrees with the Probation Office's recommended conditions of release. The government further requests that the Court order as a special condition that defendant refrain from going onto any FBI property, including the FBI Chicago Field Office, any FBI resident agency office, or any other field office in other districts.

## V. RESTITUTION

As part of his plea agreement, defendant agreed to pay restitution to the victim of the offense in an amount determined by the Court. R. 99 at ¶ 13. The Court should order restitution in the amount of $3,900, which reflects the cost of repairing the damage to the FBI structure caused by defendant's criminal conduct. *See* Supp. GVO at Exhibit C.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of time served, a three-year term of supervised release, and restitution in the amount of $3,900.

Respectfully submitted.

ANDREW S. BOUTROS
United States Attorney

By: /s/ *Sushma Raju*
SUSHMA RAJU
Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 353-5300